UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| S. MOONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-CV-00081-NCC |
| ) | |
| HUSSMANN CORPORATION, and ) | |
| PANASONIC CORPORATION of ) | |
| NORTH AMERICA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff S. Mooney's Motion to Remand. (Doc. 23). The Motion is fully briefed and ready for disposition.[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 21). For the following reasons, Plaintiff's Motion will be **GRANTED in part** and **DENIED in part**, and this action will be **REMANDED** to the Circuit Court of St. Louis County, Missouri. As a result, Defendants' Motions to Dismiss (Docs. 11, 13) will be **DENIED as moot**.

### I.   BACKGROUND

Plaintiff S. Mooney ("Plaintiff") was employed as a welder by Defendant Hussmann Corporation ("Hussmann") and Defendant Panasonic Corporation of North America ("Panasonic") (collectively "Defendants") from August 2020 until July 2023. (Doc. 44, ¶ 11-12). Prior to filing suit, Plaintiff sought administrative relief through the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights

---

[1] Defendants filed a Memorandum in Opposition to Plaintiff's Motion to Remand. (Doc. 26). Plaintiff filed a Reply Memorandum in Support of her Motion to Remand. (Doc. 28). Defendants filed a Sur-reply to Plaintiff's Motion to Remand. (Doc. 33).

("MCHR"). (Doc. 44, ¶ 10); (see also Doc. 44-1) (filing charges for gender/sex discrimination, harassment, and retaliation). On November 20, 2023, Plaintiff filed suit against Defendants in the Circuit Court of St. Louis County, Missouri. (Doc. 1-1, p.1). Defendants were served on December 15, 2023. (Doc. 1, p.1-2).

On January 16, 2024, Defendants removed that matter to this Court, arguing that some of Plaintiff's claims are inextricably intertwined with provisions of the Collective Bargaining Agreement ("CBA") and are thus completely preempted by § 301 of the Labor Management Relations Act of 1947 (LMRA). (Doc. 1). In her Amended Petition, Plaintiff alleges six (6) counts of discrimination against Defendants: 1) sex/gender discrimination in violation of the MHRA; 2) pregnancy discrimination in violation of the MHRA; pregnancy hostile work environment in violation of the MHRA; 4) retaliation in violation of the MHRA; 5) sexual harassment and sexually hostile work environment in violation of the MHRA; and 6) discrimination based upon perceived or being regarding as disabled in violation of the MHRA. (Doc. 44, p.14-20).

Plaintiff filed a Motion to Remand, arguing that this Court lacks jurisdiction because her claims do not require interpretation of the CBA and thus are not preempted by § 301. (Doc. 23, p.2). Plaintiff further argues that her petition does not allege any violation of the CBA, nor does she seek a means of recovery under federal law. *Id.* Finally, Plaintiff requests that the Court grant attorney's fees for Defendants' allegedly improper removal. *Id.* at p.11-12. Defendants filed a joint response (Doc. 26). They argue that Counts I, II, and VI of Plaintiff's claims are inextricably intertwined with provisions of the CBA and thus completely preempted by § 301. *Id.* at p.1. Defendants also contend that Plaintiff can only receive relief for pregnancy

2

accommodations under federal law. *Id.* at p.1-2. Defendants finally argue that even if the Court should remand this matter, Plaintiff should not be awarded attorney's fees. *Id.* at p.2.

## II.     LEGAL STANDARD

### A.  REMOVAL JURISDICTION

Except as otherwise expressly provided by Congress, civil actions for which the district courts of the United States have original jurisdiction may be removed from State court to federal district court. 28 U.S.C. §§ 1441(a), 1446. The removing party "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005). "Absent diversity of citizenship, federal-question jurisdiction is required." *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (quoting *Williams*, 482 U.S. at 392). Because federal law provides that plaintiff is the "master of [her claims], [plaintiff] may avoid federal jurisdiction by exclusive reliance on state law." *Williams*, 482 U.S. at 392. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393 (citing *Franchise Tax Board of Cal. V. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1,12 (1983)). However, some federal statutes completely preempt, and thereby fully displace, state-law claims, such that "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Boldt v. N. States Power Co.*, 904 F.3d 586, 590 (8th Cir. 2018) (internal

quotations omitted). Complete preemption is rare, arising in a limited number of federal statutes, including § 301 of the LMRA. *Id.* (internal citation omitted).

### B. COMPLETE PREEMPTION UNDER § 301 OF THE LMRA

Section 301 governs lawsuits to enforce a CBA. *See* 29 U.S.C. § 185. Not every case involving a CBA triggers federal jurisdiction. *Boldt*, 904 F.3d at 590. Only "claims founded directly on rights created by [CBAs] and claims substantially dependent on analysis of a [CBA]" are completely preempted. *Id.* (internal citation and quotation omitted). Mere reference or consultation to the CBA does not trigger complete preemption. *Markham*, 861 F.3d at 755. Plaintiff's "claim must require the interpretation of some specific provision of a CBA; it is not enough that the events in question took place in the workplace or that a CBA creates rights and duties similar or identical to those on which the state-law claim is based." *Id.* (internal citations and quotations omitted). "[I]f a state-law claim is 'inextricably intertwined with consideration of the terms of the labor contract,' it is preempted." *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). "A substantially dependent claim under the LMRA is one that 'require[s] the interpretation of some specific provision of' a collective-bargaining agreement, *Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998), including any documents incorporated by reference[.]" *Boldt*, 904 F.3d at 590 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204, 214–21 (1985)). "The proper starting point for determining whether interpretation of a [collective-bargaining agreement] is required ... is an examination of the [state-law] claim itself." *Id.* (quoting *Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006)).

4

### III. DISCUSSION

#### A. COUNT I

In Count I, Plaintiff brings a claim for Sex/Gender Discrimination in violation of the MHRA. (Doc. 44, p.14). Plaintiff states that she is a female and, therefore, is a member of a protected class. (Doc. 44, ¶ 115). Plaintiff further states that Defendants treated her differently than her similarly situated male coworkers by subjecting her to "unwarranted discipline, permitting her [to be] yelled at and verbally demeaned, not addressing her complaints and grievances, dismissing her formal grievances, failing to train her, blaming shortfalls in production on her, demoting her, punished her for pumping breastmilk, and then discharged her for taking time to pump breastmilk." *Id.* at ¶ 118.

In considering Plaintiff's MHRA claim, this Court "primarily appl[ies] Missouri law but may also apply federal employment discrimination law to the extent federal law is applicable and authoritative under the MHRA." *Button v. Dakota, Minnesota & E. R.R. Corp.*, 963 F.3d 824, 831 (8th Cir. 2020) (internal quotation and citation omitted). The MHRA makes it "unlawful for an employer to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." Mo. Rev. Stat. § 213.055.1(1)(a). To establish a prima facie case of workplace gender discrimination, Plaintiff must demonstrate that: "[she] was a member of a protected class; (2) [she] was qualified to perform the job; (3) [she] suffered an adverse employment action; and (4) [she] was treated differently from other similarly situated employees of the opposite sex." *Lampley v. Missouri Comm'n on Human Rights*, 570 S.W.3d 16, 24 (Mo. 2019) (internal citation omitted).

Plaintiff may prove her case through direct or circumstantial evidence. *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006) (citing *West v.*

*Conopco Corp.*, 974 S.W.2d 554, 556 (Mo. Ct. App. 1998)). Direct evidence exists when a remark is made "by a decisionmaker and 'show[s] a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable factfinder that the bias motivated the action.'" *Boyd v. Lowe's Companies, Inc.*, 4:21-CV-00417-DGK, 2023 WL 2507593, at *5 (W.D. Mo. Mar. 14, 2023) (quoting *Button*, 963 F.3d at 832).

Absent direct evidence of discrimination, Plaintiff must prove Count I with circumstantial evidence using the *McDonnell Douglas* burden shifting framework. *Boldt*, 904 F.3d at 591; *see also Eivins v. Missouri Dep't of Corr.*, 636 S.W.3d 155, 166 (Mo.App. W.D. 2021). Under this framework, Plaintiff can establish a prima facie case of sex/gender discrimination by demonstrating that she "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)).

Defendants argue that Plaintiff has failed to allege evidence of direct discrimination, and, under the *McDonnell-Douglas* burden-shifting framework, cannot "establish element two of a prima facie case of sex discrimination – that she was qualified to perform her job – without proper interpretation of the relevant rights and duties incorporated into the collective bargaining agreement." (Doc. 26, p.3). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendants contend that Plaintiff cannot satisfy the second prong without analyzing the "just cause" provision of the collective bargaining agreement and the requirements of the rules she was disciplined for, which she later grieved. (Doc. 26, p.5).

6

The Court notes that Plaintiff alleges she "was subjected to demeaning and degrading comments about her sex (gender) from coworkers and supervisors repeatedly throughout the duration of her employment." (Doc. 44, ¶ 21) (emphasis added). This would seem to constitute an allegation of direct evidence of discrimination. *See Ferguson v. Spire Missouri, Inc.*, No. 4:18-00734-CV-RK, 2019 WL 362279, at *2 (W.D. Mo. Jan. 29, 2019) (rejecting defendants' argument that substantial interpretation of the CBA was required to show plaintiff was "qualified" where Plaintiff alleged direct evidence of racial animus).

Moreover, even a circumstantial case as to Count I is not substantially dependent on analysis of the CBA. "A substantially dependent claim under the LMRA is one that requires the interpretation of *some specific provision* of a collective-bargaining agreement." *Boldt*, 904 F.3d at 590 (internal citation and quotation omitted) (emphasis added); *Markham*, 861 F.3d at 755 (plaintiff's "claim must require the interpretation of *some specific provision* of a CBA") (emphasis added). Here, Defendants cite generally to "the relevant rights and duties incorporated into the collective bargaining agreement," including "any plant rules incorporated into and created pursuant to the collective bargaining agreement." (Doc. 26, p.3). The only specific CBA provisions cited by Defendants are (1) Article 4, Management Exclusive Rights, Section 1, and (2) Article 8, Rules – Discipline – Discharge. *Id.* at p.6.

Article 4, Management Exclusive Rights, Section 1 is a relatively generic CBA provision. It provides that Defendant Hussmann has the right to set and maintain work standards and plant rules, and to direct the workforce in terms of hiring, firing, etc. *Id.* Plaintiff does not challenge Defendant Hussmann's authority pursuant to Article 4, Management Exclusive Rights, Section 1. *See Markham*, 861 F.3d at 757 (rejecting defendant's argument that interpretation was required of CBA provisions setting forth defendant's authority to issue assignments, to handle any issues

7

concerning apprenticeship matters, and to cancel the indenture of apprentices, where plaintiff brought disability discrimination claims and "ha[d] not challenged [defendant's] authority to place, transfer, or terminate his agreement").

Article 8, Rules – Discipline – Discharge is also a relatively generic CBA provision. It incorporates the plant rules and provides that "alleged instances of discipline and discharge without cause are subject to grievance." (Doc. 26, p.6). Defendants further state that the plant rules establish "expectations regarding standards of production, satisfactory work performance, being at workstations when expected, and impermissible amounts of time spent away from a work position." *Id.* at p.6-7. Defendants argue that "if the discipline at issue was proper and [Plaintiff's] grievances were denied as meritless, then Plaintiff was not qualified for her job" and "[o]n the other hand, if discipline was unwarranted and grievances were improperly denied, … then she could establish she was qualified." *Id.* at p.5.

Plaintiff brings a run-of-the-mill MHRA discrimination claim insofar as it involves discipline Plaintiff alleges was unwarranted and discriminatory, and grievances Plaintiff filed related to alleged discriminatory actions which were denied. Most MHRA discrimination claims will implicate CBA provisions similar to those above. If this Court were to find that Plaintiff's claim substantially depended on analysis of generic provisions regarding work standards and grievances, § 301 would grow to swallow the independent state right against discrimination enshrined in the MHRA. That cannot be the case.

"[P]re-emption should not be lightly inferred … since the establishment of labor standards falls within the traditional police power of the State." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21, 107 S. Ct. 2211, 2222, 96 L. Ed. 2d 1 (1987) (decided in analogous National Labor Relations Act context). Moreover, "Congress has affirmatively endorsed state

8

antidiscrimination remedies in Title VII of the Civil Rights Act of 1964." *Lingle*, 486 U.S. at 412. In dicta in *Lingle*, the Supreme Court noted with agreement the Court of Appeals' recognition that "§ 301 does not pre-empt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge." *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031, 1046 (7th Cir. 1987). The *Lingle* Court concluded that "[i]n the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective-bargaining agreement." *Id.* at 413. Plaintiff's is the typical case. *See Ferguson*, 2019 WL 362279 at *2 (rejecting defendants' argument that substantial interpretation of the CBA was required to show plaintiff was "qualified" in MHRA race discrimination case).

Defendants cite *Johnson v. Humphreys*, 949 F.3d 413 (8th Cir. 2020) in support of their argument. There, a UPS employee conducted a "free fall" delivery which he claimed was authorized and which resulted in damage. *Id.* at 415. Even though it was his first offense, UPS fired him, deeming it an "offense of extreme seriousness." *Id*. The employee brought a claim for racial discrimination in violation of the Arkansas Civil Rights Act. *Id*. The Eight Circuit upheld the district court's holding that the claim was preempted, emphasizing that the employee's claim was inextricably intertwined with interpretation of the CBA terms of art "free fall" and "offense of extreme seriousness." *Id.* at 417. Defendants have barely cited to a sufficiently "specific" provision of the CBA, much less one involving a term of art like "free fall" or "offense of extreme seriousness." *See also Ferguson*, 2019 WL 362279 at *1 (finding insufficient that defendants did not point to any CBA provision they believed required interpretation). Moreover, *Johnson* involved a single discrete alleged act of discrimination, whereas Plaintiff's case

9

involves extensive allegations of an ongoing pattern and practice of discrimination. Defendants' reliance on *Johnson* is unavailing.

Finally, Defendants contend that Plaintiff's constructive discharge allegation requires interpretation of the CBA (Doc. 26, p.7). This is essentially a restatement of the above argument since Plaintiff's allegations of discrimination (and retaliation) underly her constructive discharge allegation. (*See* Doc. 44, ¶¶ 120, 127, 129, 136, 142, 144); *Wallingsford v. City of Maplewood*, 287 S.W.3d 682, 686 (Mo. 2009) (standard for constructive discharge). Accordingly, Count I is not completely preempted by § 301 of the LMRA.

### B.  Counts II and IV

In Count II, Plaintiff brings a claim for Pregnancy Discrimination under the MHRA (Doc. 44, p.15). Plaintiff alleges that "sex/gender and/or pregnancy was a motivating factor in [Defendants'] decision to treat her differently than her similarly situated male co-workers and female co-workers who were not pregnant by subjecting her to unwarranted discipline for pumping breastmilk, not paying her for the time she was pumping breastmilk, not giving her accommodations while she was pregnant and then disciplining her for asking for help to lift heavy objects which she could not lift because she was pregnant, furthermore, demoting her and retaliating against her for complaining, ultimately leading to her constructing [sic] discharge." *Id.* at ¶ 127).

In Count VI, Plaintiff brings a claim for Discrimination Based Upon Perceived/Regarded as Disabled under the MHRA. Plaintiff alleges that Defendants: "perceived Plaintiff as being disabled and that perception was a motivating factor in the decision to treat her differently, [sic] than other individuals who were not pregnant;" "refused to accommodate Plaintiff while she was pregnant and instead punished her for asking for help to lift heavy objects" and "then demoted

10

her because of this;" "failed to accommodate Plaitniff [sic] [after giving birth] and instead punished Plaintiff for taking time to pump breastmilk, constantly harassing her for taking time to pump and not paying her for that time;" and "ultimately discharged her for taking time to pump breastmilk." *Id.* at ¶155.

"To establish discrimination on the basis of disability, a plaintiff must demonstrate that [she] is disabled and can perform [her] job with or without reasonable accommodation, that [she] was discharged [or another adverse action was taken against [] her] because of [her] disability, and there is evidence from which a jury could infer that [her] protected status was a factor in the discharge [or other adverse action]." *Schierhoff v. Glaxosmithkline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006) (citing *Devor v. Blue Cross & Blue Shield of Kan. City*, 943 S.W.2d 662, 665-66 (Mo. Ct. App. 1997)); *Gamber v. Mo. Dep't of Health & Senior Servs.*, 225 S.W.3d 470, 475 (Mo. Ct. App. 2007). Unlike federal law, the MHRA test whether an employee's job can be performed with a reasonable accommodation to determine if an employee is disabled. *Devor*, 943 S.W.2d at 666 (citations omitted). Essentially, an employee who cannot perform their job duties with a reasonable accommodation are not disabled under the statute. *Id.* Conversely, an employee who can perform their job duties with a reasonable accommodation are entitled to sue for disability discrimination so long as the other elements of the test are satisfied. *Id.* A reasonable accommodation does not impose "undue financial and administrative burdens" on the employer, nor does it require "fundamental alterations in the nature of the program." *Id.*

Defendants argue that Count II and VI are preempted because Plaintiff cannot "demonstrate the first element of a prima facie claim of disability discrimination without substantially relying on an interpretation of the CBA's seniority and job-assignment provisions." (Doc. 26, p.11). Defendants contend that their ability to reasonably accommodate Plaintiff is

11

"entirely dependent upon the authority [Defendants] derive from these sections of the CBA and any other rules and policies which must be considered along with that agreement." *Id.*

As a threshold matter, the Court finds that Plaintiff's disability discrimination allegations based on disparate treatment, like her sex discrimination claim, are not preempted. *See Cook v. SAF-Holland, Inc.*, No. 4:18CV2140 RLW, 2019 WL 4750572, at *3 (E.D. Mo. Sept. 30, 2019) (noting the difference between "disparate treatment" cases, which turn on discriminatory intent, and "reasonable accommodation" cases, which turn on failure to fulfill an affirmative duty); *cf. Boldt v. N. States Power Co.*, 904 F.3d 586, 591 (8th Cir. 2018) (finding disparate treatment claim preempted where alleged disability was alcoholism and CBA incorporated federal nuclear safety regulations, including "fitness for duty" policy addressing alcohol use).

Defendants cite *Davis v. Johnson Controls, Inc.*, 21 F.3d 866 (8th Cir. 1994), in support of complete preemption to Plaintiff's failure-to-accommodate allegations. But *Davis* is distinguishable. In *Markham v. Wertin*, the Eighth Circuit noted that "the plaintiff there filed suit in federal district court" and "the employer … raised preemption as a substantive defense to the plaintiff's state-law claim" such that "[t]here was no dispute about removal jurisdiction in *Davis*." 861 F.3d 748, 756 (8th Cir. 2017). Thus, *Davis* suggests that Defendants might ultimately prevail on a preemption defense, not that this case was properly removed.

Defendants generally reference the "seniority and job-assignment provisions" of the CBA, essentially arguing that an MHRA failure-to-accommodate claim always substantially depends on those provisions (Doc. 26 p.11). Again, Defendants fail to cite a sufficiently specific provision or set forth how this particular case substantially depends on a specific provision. *See Brown v. Holiday Stationstores, Inc.*, 723 F. Supp. 396, 405 (D. Minn. 1989) (finding disability discrimination claim involving failure to accommodate was not preempted where defendants

12

invoked CBA terms governing work assignment and seniority); *cf. Lawrence v. TVS Supply Chain Sols. N. Am., Inc.*, No. 4:19-CV-00169-SNLJ, 2019 WL 3343462 (E.D. Mo. July 25, 2019) (MHRA failure-to-accommodate and wrongful discharge claims preempted where alleged adverse actions were part of layoffs controlled by the "layoff and recall" provisions of the CBA, and plaintiff was actually rehired pursuant to those same provisions); *Gust v. Spire, Inc.*, No. 4:19-CV-00430-BCW, 2019 WL 13298892, at *6 (W.D. Mo. Dec. 17, 2019) (MHRA discrimination claim involving a failure to accommodate preempted where plaintiff's assertion that he needed to take opioids prescribed for spinal stenosis required analysis of the "Substance Abuse" part of the CBA, including policies for controlled substance testing, alcohol testing, and "doctor treated testing"); *Cook*, 2019 WL 4750572 at *2-3 (MHRA failure-to-accommodate claim preempted where defendants pointed to specific provisions related to "leaves of absence" and "absenteeism"); *see also Markham*, 861 F.3d at 757 (finding MHRA failure-to-accommodate claim related to synthetic THC prescribed for Crohn's Disease was not preempted).

Finally, Defendants argue that Plaintiff's failure-to-accommodate allegations in Count II involve a federal question (Doc. 26, p.12). They argue that "any duty to accommodate [] pregnancy [] is completely alien to Missouri state law" and that "there is no requirement under the MHRA to offer accommodations to a pregnant employee based solely on an employee's pregnancy." *Id.* at 12-13. Defendants conclude that the only possible duty to accommodate arises under federal law, notably, the Pump Act for Nursing Mothers ("Pump"), 29 U.S.C. § 218d under the Fair Labor Standards Act ("FLSA"), and the Pregnancy Workplace Fairness Act ("PWFA"), 42 U.S.C. § 2000gg. *Id*. Defendants concede that "federal discrimination statutes do not preempt state discrimination laws." *Id.* at 12.

Plaintiff alleges Count II pursuant to the MHRA, not the Pump Act nor the PWFA. And Defendants do not deny that at least some portion of that claim is colorable. "[W]here the substantive right being asserted is created by state law, and the complete preemption doctrine does not apply, the unavailability of the remedy being sought by the plaintiff should not deprive the state court of jurisdiction to adjudicate the claim." *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1244 (8th Cir. 1995). "Questions concerning the viability of plaintiff's state law claim differ from the jurisdictional issue and are matters for the state court to decide." *Id*. Moreover, federal district courts in Missouri have consistently found that even alleged violations of federal law (which Plaintiff is not alleging) do not create federal-question jurisdiction when those violations are alleged as instances of discrimination under the MHRA. *See Miller v. Metro. Sewer Dist.*, No. 4:10-cv-00363-JCH, 2010 WL 2399553, at *2 (E.D. Mo. June 10, 2010); *Davis v. Oliver St. Dermatology Mgmt.*, LLC, No. 4:17-cv-00250-FJG, 2017 WL 3494231, at *2 (W.D. Mo. Aug. 15, 2017); *Zampitella v. Walgreens Co.*, No. 4:16-cv-00781 (CEJ), 2016 WL 3627290, at *3 (E.D. Mo. July 6, 2016). The Court finds that any question regarding the existence of a duty to accommodate pregnancy under the MHRA is best left to the state court to decide. *See Humphrey*, 58 F.3d at 1243-44 (agreeing that plaintiff was on "shaky ground" in requesting only injunctive relief when the statute referenced only damages, but rejecting the argument that therefore, plaintiff's claim was a pretext for undoing what was done pursuant to the CBA and should be preempted). Accordingly, Counts II and VI are not completely preempted by § 301 of the LMRA.

### C. Attorney's Fees

When remanding an action to state court, a district court may require a defendant to pay just costs and actual expenses that a plaintiff has incurred because of improper removal. 28

14

U.S.C. § 1447(c). An award under § 1447(c) depends on the reasonableness of the removal. *Convent Corp. v. City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*. The Court does not consider the party's motive, but instead considers "the objective merits of removal at the time of removal, irrespective of the ultimate remand." *Convent*, 784 F.3d at 483; *Nguyen v. Outfield Brewhouse, LLC*, No. 4:17-CV-00973-JAR, 2017 WL 3085325, at *3 (E.D. Mo. July 19, 2017). The Court finds that Defendants had an objectively reasonable basis for removal and will therefore deny Plaintiff's request for attorney's fees. *See Ferguson*, 2019 WL 362279 at *2 (finding defendants had an objectively reasonable basis to argue that the complete-preemption exception applied and denying plaintiff's request for attorney's fees).

## IV. CONCLUSION

For the reasons stated above, this case is remanded to the Circuit Court of St. Louis County, Missouri; Plaintiff's request for attorney's fees under 28 U.S.C. § 1447(c) is denied; and Defendants' Motions to Dismiss (Doc. 11, 13) are denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. 23) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **REMAND** this action to the 21st Judicial Circuit Court of Missouri (St. Louis County) from which it was removed.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney's fees (Doc. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Panasonic's Motion to Dismiss (Doc. 11) is **DENIED as moot**.

**IT IS FINALLY ORDERED** that Defendant Hussmann's Motion to Dismiss (Doc. 13), which Panasonic joined, is **DENIED as moot**.

Dated this 27th day of June 2024.

                                                       /s/ Noelle C. Collins
                                                  NOELLE C. COLLINS
                                                  UNITED STATES MAGISTRATE JUDGE